**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

---

|                                          |   |                          |
|------------------------------------------|---|--------------------------|
| TYJUAN D. JACKSON,                       | : |                          |
|                                          | : |                          |
|                     Plaintiff,           | : |  Civil No. 11-6278 (JBS) |
|                                          | : |                          |
|           v.                             | : |                          |
|                                          | : |      **OPINION**         |
| FEDERAL BUREAU OF PRISONS,               | : |                          |
| et al.,                                  | : |                          |
|                                          | : |                          |
|                     Defendants.          | : |                          |

---

**APPEARANCES:**

> TYJUAN D. JACKSON, Plaintiff pro se
> Reg. No. # 40595-039
> FCI Fort Dix
> P.O. Box 2000
> Fort Dix, New Jersey 08640

**SIMANDLE**, Chief Judge

Plaintiff, Tyjuan D. Jackson, a federal inmate confined at the FCI Fort Dix in Fort Dix, New Jersey, at the time he submitted the above-captioned Complaint for filing, seeks to bring this action in forma pauperis. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, this Court must review the Complaint, pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, to determine whether the Complaint should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should be proceed in part.

## I.  BACKGROUND

Plaintiff, Tyjuan D. Jackson brings this civil rights action against the following defendants: Federal Bureau of Prisons ("FBOP"); FCI Fort Dix/Northeast Regional Office; Warden Donna Zickefoose; and Counselor Dixon.  (Complaint, Caption and ¶ 4b and c).  The following factual allegations by plaintiff are taken from the Complaint, and are accepted for purposes of this screening only.

Jackson alleges that on two occasions, December 30, 2009 and January 6, 2010, he was strip searched by defendant Dixon in an arbitrary, dehumanizing, and inappropriately sexual manner. Namely, Jackson alleges that Dixon touched the base of plaintiff's penis five different times, touching plaintiff's scrotum and cupping plaintiff's buttocks in the staff alley in front of Ms. Semidy, a FCI Fort Dix educational staff person. Dixon also allegedly took Jackson in the bathroom immediately after this search and strip searched plaintiff privately. Jackson complains that Dixon looked at plaintiff while naked for

a whole minute.  Dixon also thoroughly examined plaintiff's clothing and coat.  At the conclusion of the strip search, Dixon allegedly told Jackson: "If you didn't know, I'm trying to see something."  He also told plaintiff, "This is what happens to people that come to my building."  (Compl., Docket entry no. 1-2).

Jackson states that he complained about the situation to Ms. Semidy and the Lieutenant in charge.  The Lieutenant told Jackson that Dixon could strip search him if he had reason to believe that Jackson had something.  Jackson alleges that the whole time he was in Dixon's building, the outside doors were locked, and that Dixon waited an hour and a half after Jackson left the building to go to plaintiff's place of work to pat search and strip search plaintiff.  (Id.).

Jackson does not allege that he filed a grievance directly with Warden Zickefoose, out of fear of retaliation.  He alleges that staff have intercepted his mail, including administrative remedies, in the past, and have harassed inmates, including plaintiff, for pursuing their remedies.  (Id.).  Jackson also alleges that he sent a detailed letter of his complaints to the Office of Inspector General, filed a sensitive BP-10 to the Northeast Regional Director and a BP-11 to the Central Office. (Compl., ¶ 5).  There is no mention of filing an administrative remedy (or BP-9) with Warden Zickefoose.

Plaintiff seeks an unspecified amount in compensatory damages.  (Compl., ¶ 7).

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to sua sponte screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007)(following Estelle v. Gamble, 429 U.S. 97, 106 (1976) and Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  See also United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court

4

need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  <u>See also</u> <u>Erickson</u>, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2)).

However, recently, the Supreme Court revised this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure which provides

that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "<u>Iqbal</u>, 129 S.Ct. at 1949 (quoting <u>Twombly</u>, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief."  <u>Fed. Rule Civ. Proc.</u> 8(a)(2).

<u>Iqbal</u>, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1948. The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint are plausible. Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin for the 'no set of facts' standard" set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly. Fowler, 578 F.3d at 210. The Third Circuit now requires that a district court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

_____

[2] In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., 355 U.S. at 45-46. Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

>First, the factual and legal elements of a claim should be separated.  The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.]  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.  A complaint has to "show" such an entitlement with its facts.  See Phillips, 515 F.3d at 234-35.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'"  Iqbal, [129 S.Ct. at 1949-50].  This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 578 F.3d at 210-211.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal.  See Erickson v. Pardus, 551 U.S. 89 (2007).  Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

III.   <u>BIVENS ACTIONS</u>

Jackson appears to assert that his constitutional rights have been violated, similar to a claim proceeding under 42 U.S.C. § 1983.  To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).  Here, plaintiff is a federal prisoner and his claims are asserted against federal actors.  Consequently, his claims alleging constitutional violations are more appropriately brought under <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

In <u>Bivens</u>, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment.  In doing so, the Supreme Court created a new tort as it applied to federal officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.  The Supreme Court has also implied <u>Bivens</u> damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).

Bivens actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  Egervary v. Young, 366 F.3d 238, 246 (3d Cir. 2004), cert. denied, 543 U.S. 1049 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into Bivens suits.  Chin v. Bowen, 833 F.2d 21, 24 (2d Cir. 1987)).

In order to state a claim under Bivens, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  See Mahoney v. Nat'l Org. For Women, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing Flagg Brothers, Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  United States v. Mitchell, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, plaintiff cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, see FDIC v. Meyer, 510 U.S. 471, 484-87 (1994), or against any of the individual defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in

his or her official capacity is a suit against the government).
Here, Jackson asserts claims against federal agencies, the
Federal Bureau of Prisons and the FCI Fort Dix Northeast Regional
Office.  Consequently, because there has been no waiver of
immunity by these federal agencies in such actions for damages as
brought by plaintiff here, the Complaint will be dismissed with
prejudice, in its entirety, as against these defendants, pursuant
to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

IV.  <u>ANALYSIS</u>

A.  <u>Unlawful Strip Search Claim</u>

Jackson's Complaint essentially alleges that he suffered a
constitutional violation when Dixon conducted several strip
searches in an inappropriate, unreasonable and unlawful manner.

The Fourth Amendment protects "[t]he right of the people to
be secure in their persons ... against unreasonable searches and
seizures."  U.S. CONST. amend. IV.  Reasonableness under the
Fourth Amendment "depends on all of the circumstances surrounding
the search or seizure and the nature of the search or seizure
itself."  <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602,
618 (1988)(quoting <u>United States v. Montoya de Hernandez</u>, 473
U.S. 531, 537 (1985)).  "Thus, the permissibility of a particular
practice is judged by balancing its intrusion on the individual's
Fourth Amendment interests against its promotion of legitimate
governmental interests."  <u>Id</u>. at 619 (quotation marks and
internal citation omitted).

11

In Hudson v. Palmer, 468 U.S. 517, 530 (1984), a prisoner argued that a cell search conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, person invaded for such a purpose.  Id. at 529.  The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy."  Id. at 530.  The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted).  The same conclusion was reached with respect to pretrial detainees other than convicted prisoners.  See Bell v. Wolfish, 441 U.S. 520, 558-560 (1979)(finding that a body cavity searches of pretrial detainees do not violate the Fourth Amendment).

Inmates also do not have a Fourth Amendment right to be free of strip searches, which may be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner.  Bell v. Wolfish, 441 U.S. 520 (1979); Ostrander v. Horn, 145 F. Supp.2d 614, 620 (M.D. Pa. 2001). "Maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or

12

retraction of the retained constitutional rights." Bell, 441
U.S. at 546.  As such, the alleged infringement of a prisoner's
constitutional rights must be evaluated in the light of the
central objective of prison administration, safeguarding
institutional security.  Id.  Prison officials should be accorded
"wide-ranging deference in the adoption and execution of policies
and practices that in their judgment are needed to preserve
internal order and discipline and to maintain institutional
security."  Bell, 441 U.S. at 547; see also Florence v. Bd. of
Chosen Freeholders of Cnty. of Burlington, 566 U.S. ----, 132
S.Ct. 1510, ---L.Ed.2d ----, 2012 WL 1069092, at *7 (2012).
"[I]n the absence of substantial evidence in the record to
indicate that the [prison] officials have exaggerated their
response to [legitimate security interests,] courts should
ordinarily defer to their expert judgment in such matters."
Bell, 441 U.S. at 548 (citation omitted); Florence, --- U.S.
----, at ----, 132 S.Ct. 1510, ---L.Ed.2d ----, at ----, 2012 WL
1069092, at *7 (same).

     Thus, in the context of the Fourth Amendment, courts must
conduct a balancing of the need for a particular search against
the invasion of personal rights that the search entails.  "Courts
must consider the scope of the particular intrusion, the manner
in which it is conducted, the justification for initiating it,
and the place in which it is conducted."  Bell, 441 U.S. at 559.
Strip searches that are excessive, vindictive, harassing, or

13

unrelated to any legitimate penological interest may violate the Fourth Amendment.  Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

In Bell, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body.  In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.  Bell, 441 U.S. at 559; see also Turner v. Safley, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).

Consequently, even if strip searches were conducted repeatedly or unnecessarily, there is no Fourth Amendment violation if plaintiff can not show that the strip searches were conducted in an unreasonable manner.  See Wilson v. Shannon, 982 F. Supp. 337, 339 (E.D. Pa. 1997); Collins v. Derose, 2009 WL 812008, at *5 (M.D. Pa. March 26, 2009).  See also Florence v. Bd. of Chosen Freeholders of Cnty. of Burlington, 566 U.S. ----,

132 S.Ct. 1510, ---L.Ed.2d ----, 2012 WL 1069092 (2012); <u>United
States v. Whitted</u>, 541 F.3d 480, 486 (3d Cir. 2008).

Here, Jackson's allegations claim more than just that he was
subjected to strip searches.  Rather, he alleges that his penis
and scrotum were touched in a sexually inappropriate and
humiliating way.  Thus, the allegations of the humiliating and
intrusive nature of the strip searches, together with the
allegation that the searches were conducted on an arbitrary
basis, if true, may support a cognizable claim at this early
juncture.  <u>See</u> <u>Watson v. Sec'y Pennsylvania Dept. Of Corrections</u>,
436 Fed. Appx. 131, 136 (3d Cir. July 8, 2011).  Accordingly, the
Court will allow the Complaint to proceed at this time, as
against defendant Dixon only.

B.  <u>Supervisor Liability Claim</u>

Jackson also appears to assert a claim against defendant
Warden Zickefoose, alleging that she failed to take action
against or discipline Dixon after notified of the occurrences.
This essentially is a claim of supervisor liability.  However,
Jackson does not allege that he told Zickefoose of the alleged
occurrences, and in fact, alleges only that he filed BP-10 and
BP-11 forms because he feared retaliation if he pursued his
administrative remedy directly to staff at FCI Fort Dix.  Thus,
his claim against Zickefoose seems to be based loosely on a claim
that she failed to supervise the conduct of her staff.

15

The Third Circuit permits § 1983 claims to proceed based on a theory of supervisory liability where a plaintiff can show defendants had knowledge of their subordinates' violations and acquiesced in the same.[3]  See Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995)(permitting plaintiff to hold a supervisor liable for a subordinate's § 1983 violation provided plaintiff is able to show "the person in charge ... had knowledge of and acquiesced in his subordinates' violations").  To impose

---

[3]  In light of the Supreme Court's decision in Iqbal, supra, the Court questions the continuing validity of the Third Circuit's supervisory liability jurisprudence.  As stated by the Supreme Court:

> [Respondent] argues that, under a theory of "supervisory liability," petitioners can be liable for "knowledge and acquiescence in their subordinates' use of discriminatory criteria to make classification decisions among detainees." That is to say, respondent believes a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution.  We reject this argument.  Respondent's conception of "supervisory liability" is inconsistent with his accurate stipulation that petitioners may not be held accountable for the misdeeds of their agents.  In a [Section] 1983 suit or a Bivens action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer.  Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.

Iqbal, 129 S.Ct. at 1949 (emphasis added).  However, although the Third Circuit has acknowledged Iqbal' s potential impact on § 1983 supervisory liability claims, it has declined to hold that a plaintiff may no longer establish liability under § 1983 based on a supervisor's knowledge of and acquiescence in a violation. Santiago v. Warminster Twp., 629 F.3d 121, 130 n. 8 (3d Cir. 2010); Bayer v. Monroe, 577 F.3d 186, 190 n. 5 (3d Cir. 2009). Accordingly, this Court will continue to apply the Third Circuit's traditional supervisory liability analysis as set forth above.  See Brickell v. Clinton Cnty. Prison Bd., 658 F. Supp.2d 621, 625-26 (M.D.Pa. 2009)(questioning the continuing viability of Baker v. Monroe Twp., but applying its holding to the facts of the case).

liability on a supervisory official there must be "both (1)
contemporaneous knowledge of the offending incident or knowledge
of a prior pattern of similar incidents, and (2) circumstances
under which the supervisor's assertion could be found to have
communicated a message of approval to the offending subordinate."
Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988).
Allegations of actual knowledge and acquiescence must be made
with particularity.  Rode v. Dellarciprete, 845 F.2d 1195, 1207
(3d Cir. 1988).  In this case, the Complaint does not allege or
suggest that Zickefoose had contemporaneous knowledge of the
incident.  Accordingly, Jackson is only able to state a claim to
the extent that he is able to show knowledge of a prior pattern
of similar incidents coupled with circumstances indicating a
message of approval.  The Complaint fails to allege any such
facts.

        Thus, Jackson appears to allege only that Zickefoose failed
to take action once notified of the occurrences, even though he
also alleges that he did not file any grievances at FCI Fort Dix.
Participation in the after-the-fact review of a grievance or
appeal is insufficient to establish personal involvement on the
part of those individuals reviewing grievances.  See Rode, 845
F.2d at 1208 (finding the filing of a grievance insufficient to
show the actual knowledge necessary for personal involvement);
Brooks v. Beard, 167 Fed. Appx. 923, 925 (3d Cir. 2006)(per
curiam)(allegations of inappropriate response to grievances does

not establish personal involvement required to establish supervisory liability).  Therefore, Warden Zickefoose cannot be held liable in this instance, and the Complaint will be dismissed with prejudice for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed with prejudice, in its entirety, as against the named defendants, the Federal Bureau of Prisons and the FCI Fort Dix Northeast Regional Office, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2), and as against named defendant Warden Zickefoose, for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).   The Complaint will be allowed to proceed at this time as against defendant Counselor Dixon.  An appropriate order follows.




 **s/ Jerome B. Simandle**
JEROME B. SIMANDLE, Chief Judge
United States District Court

Dated:  **April 24, 2012**




18